UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREW BARKER, SARAH BARKER, and N. B., a minor, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 1:11-cv-00938-TWP-DKL ) |
| CAREFUSION 303, INC., formerly known as Alaris Medical Systems, Inc., CARDINAL HEALTH 303, INC., CAREFUSION CORPORATION, | ) ) ) ) ) |
| Defendants, | ) |

**ENTRY ON JOINT MOTION TO DISMISS**

This matter is before the Court on Defendants CareFusion 303, Inc., formerly known as Alaris Medical Systems, Inc., Cardinal Health 303, Inc., and CareFusion Corporation's (collectively, "CareFusion") Joint Motion to Dismiss (Dkt. 65) Plaintiffs Andrew Barker's and Sarah Barker's (collectively, "the Barkers") emotional distress claim, to dismiss the Barkers as parties to this action, and to dismiss any non-product liability claims. Because the Court agrees with CareFusion that the Barkers have failed to state a claim for emotional damages under the Indiana Products Liability Act ("IPLA") the Motion to Dismiss (Dkt. 65) must be **GRANTED**.

**I. BACKGROUND**

Andrew and Sarah Barker are parents to Plaintiff N.B., a child born November 4, 2009. CareFusion designs, manufactures, inspects, and sells medical equipment including the Alaris PC Unit Model 8000, Alaris Pump Module 8100, and Alaris Syringe Module 8110 (collectively, "the System"). On November 11, 2009, N.B. was a patient at St. Francis Hospital in Indianapolis. NB was receiving medical fluids, including total parenteral nutrition ("TPN") and oral gastric feedings, via the System. At approximately 11:30 a.m., N.B.'s nurses received an

order to discontinue N.B.'s TPN through the System.  The System was powered down at 1:15 p.m.  Unfortunately, before the System was removed, it malfunctioned causing N.B. to receive an influx of TPN in an excessive amount and at a rapid and unsafe rate.  N.B. suffered respiratory and cardiac arrest and became unresponsive.  Shortly before N.B. suffered the cardiac arrest, the Barkers arrived at N.B.'s bedside for visitation and witnessed the cardiac arrest and resuscitation efforts.  Tragically, as a result of the excessive and rapid infusion of TPN, N.B. suffered brain damage and the Barkers filed this action, which is governed by the IPLA.  CareFusion does not seek dismissal of the Barkers' product defect claim brought on behalf of their minor child, N.B., but has filed a motion to dismiss the Barkers' emotional distress claim.

## II.  LEGAL STANDARD

When reviewing a 12(b)(6) motion, the Court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff.  *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008) (citations omitted).  However, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citations omitted).  To be facially *plausible*, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## III.  DISCUSSION

In Count III of their amended complaint, the Barkers seek damages for emotional distress suffered as a result of witnessing N.B.'s cardiac/respiratory arrest and the resuscitation efforts

caused by the malfunctioning CareFusion System. CareFusion argues the Barkers' emotional distress claim must be dismissed because they cannot establish that they suffered "physical harm" as required by the IPLA. *See* Ind. Code §§ 34-20-1-1, 34-20-2-1. In this diversity jurisdiction case, the Court must apply Indiana's substantive law. Under Indiana law, "[a] person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer . . . is subject to liability for physical harm caused by that product to the user . . . ." I.C. § 34-20-2-1. In addition, Ind. Code § 34-6-2-105 defines physical harm as "bodily injury, death, loss of services, and rights arising from any such injuries, as well as sudden, major damage to property." And, Ind. Code § 34-6-2-29 defines user or consumer as "(1) a purchaser; (2) any individual who uses or consumes the product; (3) any other person who, while acting for or on behalf of the injured party, was in possession and control of the product in question; or (4) any bystander injured by the product who would reasonably be expected to be in the vicinity of the product during its reasonably expected use."

In considering a question of state law, federal courts must apply state law as declared by the state supreme court, or in the absence of a statement by that court, by its intermediate appellate courts. *Trytko v. Hubbell, Inc.*, 28 F.3d 715, 719–20 (7th Cir. 1994). This matter presents a novel question, which has not been answered by the Indiana Supreme Court or lower Indiana Courts; that is, whether a bystander who sustains emotional injury suffers physical harm sufficient to establish a claim under the IPLA.[1] In these circumstances, "a federal court must exhaustively dissect each piece of evidence thought to cast light on what the highest state court would ultimately decide." *Id.* at 720.

---

[1] CareFusion does not contest that the Barkers are users or consumers under the IPLA.

In the absence of guiding state law, CareFusion relies on *Doerner v. Swisher International, Inc.*, 272 F.3d 928 (7th Cir. 2001), in which the Seventh Circuit affirmed the dismissal of an emotional damages claim because mental distress does not qualify as physical harm under the IPLA. In *Doerner*, the plaintiff filed suit against a tobacco company for loss of consortium and mental distress after her ex-husband died of tongue cancer. The emotional distress claim was dismissed by the trial court, and in affirming the dismissal, the Seventh Circuit rejected plaintiff's argument that Indiana law does not require a showing of physical harm to support an emotional distress claim. *Id.* at 932. The plaintiff in *Doerner* relied on *Groves v. Taylor*, 729 N.E.2d 569 (Ind. 2000), which expanded the common law to include bystander claims for emotional distress without a direct physical impact to a plaintiff. The Seventh Circuit stated,

> *Groves* involved a *common law* tort claim, not a claim under the IPLA. The plain language of the IPLA requires that Doerner establish that she suffered a 'physical harm caused by a product,' regardless whether Indiana common law would have required her to do so. Ind. Code § 34-20-1-1. 'Mental distress' does not qualify as a 'physical harm' under the IPLA.

*Doerner*, 272 F.3d at 932 (emphasis added).

The Barkers contend that *Doerner* does not address the definition of "physical harm" and is thus not helpful in this case. To support this contention, the Barkers cite to *Groves* and *Spangler v. Bechtel*, 958 N.E.2d 458 (Ind. 2011). In *Spangler*, the Indiana Supreme Court explained Indiana's negligent infliction of emotional distress jurisprudence.

> [I]ndependent, stand-alone actions for negligent infliction of emotional distress are not cognizable in Indiana. But actions seeking damages for emotional distress resulting from the negligence of another are permitted in two situations: where the plaintiff has (1) witnessed or come to the scene soon thereafter the death or severe injury of certain classes of relatives (i.e., the bystander rule) or (2) suffered a direct impact (i.e., the modified impact rule).

*Spangler*, 958 N.E.2d at 466 (citations omitted).  "Under the bystander rule, the death/severe injury must have been proximately caused by the defendant's breach of some cognizable legal duty owed by the defendant *to the relative* at issue." *Id.*  In other words, there is no legal duty not to inflict emotional injury on another. *Id.*  Moreover, there is no requirement that bystanders suffer some "physical" connection to the incident giving rise to the emotional trauma, unlike the modified impact rule which is "properly understood as being 'physical' in nature." *Ross v. Cheema*, 716 N.E.2d 435, 437 (Ind. 1999).

In this Court's view, the Barkers' claim for emotional damages suffers a fatal flaw that would not be detrimental in a common law tort action, because the IPLA is the sole remedy for product liability actions sounding in tort. *See Dague v. Piper Aircraft Corp.*, 418 N.E.2d 207, 212 (Ind. 1981); *see also Gardner v. Tristar Sporting Arms*, No. 1:09-cv-0671-TWP-WGH, 2010 WL 3724190, at *2 (S.D. Ind. Sep. 15, 2010).  Thus, the Barkers must fulfill the requirements of the IPLA before their claim can proceed.

The Barkers fail to allege any bodily injuries, death, loss of services, and rights arising from any such injuries, or major property damage.  They argue their emotional distress falls under the "rights arising from any such injuries" category of "physical harm," but fail to adequately explain why.  It is a fair reading of the statute that "rights arising from any such injuries" refers to a bodily injury suffered by the plaintiff and not by a third party.  And the Barkers have not alleged any physical manifestation of their emotional distress that would establish their own bodily injury.[2]  The Barkers essentially ask this Court to not just recognize

---

[2] In the insurance context, the Indiana Supreme Court has interpreted policy language of "bodily injury" defined as "bodily injury to a person and sickness, disease or death which results from it" as including emotional and mental distress. *State Farm Mut. Auto. Ins. Co. v. Jakupko*, 881 N.E.2d 654, 657 (Ind. 2008).  The Court found that because the definition extended bodily injury to include "sickness and disease," the average lay person reading the policy would expect mental anguish to be included within the definition of sickness or disease. *Id.*  The IPLA in contrast does not extend the definition of physical harm to sickness or disease, but is limited to bodily injury, death, loss of services, and rights arising from any such injuries.

5

them as users or consumers of the product to whom a duty was owed, but to also import the common law tort bystander theory of recovery into the IPLA analysis by using N.B.'s injuries as the predicate physical harm. This the Court cannot do. The Barkers must allege some physical harm of their own to support a claim for relief. *Cf. Bray v. Marathon Corp.*, 588 S.E.2d 93, 96 (S.C. 2003) (holding that "[i]t is not unreasonable to conclude the user of a defective product might suffer physical harm from emotional damage if the use of the product results in death or serious injury to a third person, irrespective of the relationship between the user and third person."). Stated another way, in the Court's view, damages for emotional distress are not foreclosed entirely under the IPLA, but in order to seek such damages a plaintiff must allege his or her own physical harm, apart from that of a third party. This is unlike a common law tort claim under the bystander theory where the bystander/plaintiff's claim is predicated on a breach of legal duty to a third party. Because the Barkers have only alleged that they suffer from emotional distress as a result of witnessing N.B.'s serious injury, they have failed to state a claim under the IPLA.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court finds that the Barkers have failed to allege physical harm, a requirement of the IPLA. Therefore, CareFusion's Motion to Dismiss (Dkt. 65) is **GRANTED.** Any claims made on behalf of Plaintiffs Andrew and Sarah Barker are **DISMISSED without prejudice**.

SO ORDERED.

Date: 11/30/2012

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Stephen A. Oliver
BOREN OLIVER & COFFEY
steveoliver@boclawyers.com

Laura J. Conyers
FINDLING PARK & ASSOCIATES, P.C.
lconyers@findlingpark.com

Kevin W. Alexander
GORDON & REES, LLP
kalexander@gordonrees.com

Maha Sarah
GORDON & REES, LLP
msarah@gordonrees.com

Renata Ortiz Bloom
GORDON & REES, LLP
rbloom@gordonrees.com

Christopher L. Riegler
HALL RENDER KILLIAN HEATH & LYMAN
criegler@hallrender.com

Mary Nold Larimore
ICE MILLER LLP
larimore@icemiller.com

Nancy Menard Riddle
ICE MILLER LLP
nancy.riddle@icemiller.com

Samuel L. Jacobs
JACOBS LAW LLC
sjacobs@indianainjury.com